1

2

3

4

5

6

7

8                      **UNITED STATES DISTRICT COURT**

9                     **CENTRAL DISTRICT OF CALIFORNIA**

10                         **SOUTHERN DIVISION**

11

12  WESLEY HALE,                    )     No. SACV 08-1310 CW
                                    )
13              Plaintiff,          )     DECISION AND ORDER
           v.                       )
14                                  )
    MICHAEL J. ASTRUE,              )
15  Commissioner, Social Security  )
    Administration,                 )
16                                  )
                Defendant.          )
17  _____)

18

19      The parties have consented, under 28 U.S.C. § 636(c), to the

20  jurisdiction of the undersigned Magistrate Judge.  Plaintiff seeks

21  review of the Commissioner's denial of disability benefits.  As

22  discussed below, the court finds that the Commissioner's decision

23  should be reversed and this matter remanded for payment of benefits.

24                      **I.  BACKGROUND**

25      Plaintiff Wesley Hale was born on December 9, 1976, and was

26  thirty years old at the time of his administrative hearing.

27  [Administrative Record ("AR") 16, 47.]  Plaintiff has a high school

28  education and past relevant work as a warehouse attendant, bouncer,

                                   1

1  and grocery bagger. [AR 39-40.]  Plaintiff alleges disability on the
2  basis of back problems and diabetes. [AR 50.]

3              **II.   PROCEEDINGS IN THIS COURT**

4      Plaintiff's complaint was lodged on November 18, 2008, and filed
5  on November 25, 2008.  On May 14, 2009, Defendant filed an answer and
6  Plaintiff's Administrative Record ("AR").  On October 9, 2009, the
7  parties filed their Joint Stipulation ("JS") identifying matters not
8  in dispute, issues in dispute, the positions of the parties, and the
9  relief sought by each party.  This matter has been taken under
10 submission without oral argument.

11           **III.   PRIOR ADMINISTRATIVE PROCEEDINGS**

12     Plaintiff applied for a period of disability and disability
13 insurance benefits ("DIB") under Title II of the Social Security Act
14 on April 25, 2006, alleging disability since April 19, 2005. [AR 9.]
15 After the application was denied initially and on reconsideration,
16 Plaintiff requested an administrative hearing, which was held on
17 November 28, 2007, before Administrative Law Judge ("ALJ") Charles E.
18 Stevenson.  [AR 16.]  Plaintiff appeared without counsel,[1] and
19 testimony was taken from Plaintiff and vocational expert Joseph
20 Torres. [AR 17.]  The ALJ denied benefits in a decision issued on
21 January 25, 2008.  [AR 9-15.]  When the Appeals Council denied review
22 on September 25, 2008, the ALJ's decision became the Commissioner's
23 final decision.  [AR 1-3.]

24
25     [1]  Plaintiff stated at the beginning of the hearing that he was
   unrepresented because he did not have funds to pay an attorney. [AR
26 18.]  The ALJ informed Plaintiff that Social Security plaintiffs'
   attorneys typically work on contingency basis, provided the name of a
27 legal services agency, and asked Plaintiff twice whether he would like
   to proceed with an attorney. [AR 19-22.]  Plaintiff elected to remain
28 unrepresented at the hearing, stating that he had already submitted
   all relevant medical records. [AR 20, 22.]

### IV.   STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The Commissioner's (or ALJ's) findings and decision should be upheld if they are free of legal error and supported by substantial evidence.  However, if the court determines that a finding is based on legal error or is not supported by substantial evidence in the record, the court may reject the finding and set aside the decision to deny benefits.  See Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Tonapetyan v. Halter, 242 F.3d 1144, 1147 (9th Cir. 2001); Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir.  2001); Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996); Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995)(per curiam).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick v. Chater, 157 F.3d at 720.  It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id.  To determine whether substantial evidence supports a finding, a court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Id.  "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Reddick, 157 F.3d at 720-721; see also Osenbrock v. Apfel, 240 F.3d at 1162.

### V.   DISCUSSION

#### A.   THE FIVE-STEP EVALUATION

To be eligible for disability benefits a claimant must

3

demonstrate a medically determinable impairment which prevents the claimant from engaging in substantial gainful activity and which is expected to result in death or to last for a continuous period of at least twelve months. Tackett v. Apfel, 180 F.3d at 1098; Reddick v. Chater, 157 F.3d at 721; 42 U.S.C. § 423(d)(1)(A).

Disability claims are evaluated using a five-step test:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996); see also Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987); Tackett v. Apfel, 180 F.3d at 1098-99; 20 C.F.R. § 404.1520, § 416.920. If a claimant is found "disabled" or "not disabled" at any step, there is no need to complete further steps. Tackett v. Apfel, 180 F.3d 1098; 20 C.F.R. § 404.1520.

Claimants have the burden of proof at steps one through four, subject to the presumption that Social Security hearings are non-adversarial, and to the Commissioner's affirmative duty to assist claimants in fully developing the record even if they are represented by counsel. Tackett v. Apfel, 180 F.3d at 1098 and n.3; Smolen v. Chater, 80 F.3d at 1288. If this burden is met, a prima facie case of

4

disability is made, and the burden shifts to the Commissioner (at step five) to prove that, considering residual functional capacity ("RFC")[2], age, education, and work experience, a claimant can perform other work which is available in significant numbers. <u>Tackett v. Apfel</u>, 180 F.3d at 1098, 1100; <u>Reddick v. Chater</u>, 157 F.3d at 721; 20 C.F.R. § 404.1520, § 416.920.

## B.  THE ALJ'S EVALUATION IN PLAINTIFF'S CASE

Here, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged disability onset date (step one); that plaintiff had "severe" impairments, namely degenerative disc disease of the lumbar spine and non-insulin-dependent diabetes mellitus (step two); and that plaintiff did not have an impairment or combination of impairments that met or equaled a "listing" (step three). [AR 11.]  The ALJ determined that Plaintiff had an RFC for light work with limitations to occasional climbing, kneeling, bending and stooping, and restrictions from climbing ladders, working at unprotected heights, and being around hazardous equipment. [AR 12.] The vocational expert testified that a person with Plaintiff's RFC and other vocational factors could perform Plaintiff's past relevant work as a bouncer, as it is generally performed in the national economy (step four). [AR 14-15.]  Accordingly, Plaintiff was found not "disabled" as defined by the Social Security Act. [AR 15.]

---

[2]  Residual functional capacity measures what a claimant can still do despite existing "exertional" (strength-related) and "nonexertional" limitations. <u>Cooper v. Sullivan</u>, 880 F.2d 1152, 1155 n.s. 5-6 (9th Cir. 1989).  Nonexertional limitations limit ability to work without directly limiting strength, and include mental, sensory, postural, manipulative, and environmental limitations. <u>Penny v. Sullivan</u>, 2 F.3d 953, 958 (9th Cir. 1993); <u>Cooper</u>, 800 F.2d at 1155 n.7; 20 C.F.R. § 404.1569a(c).  Pain may be either an exertional or a nonexertional limitation. <u>Penny</u>, 2 F.3d at 959; <u>Perminter v. Heckler</u>, 765 F.2d 870, 872 (9th Cir. 1985); 20 C.F.R. § 404.1569a(c).

5

C.   **ISSUES IN DISPUTE**

The parties' Joint Stipulation identifies four disputed issues:

1.   Whether the ALJ properly considered the opinion of
     Plaintiff's treating physician, Dr. Anne Ford;

2.   Whether the ALJ properly considered the opinion of
     Plaintiff's treating neurologist, Dr. Bradley Noblett;

3.   Whether the ALJ properly considered the opinion of
     Plaintiff's treating orthopedist, Dr. Raed Ali; and

4.   Whether the ALJ properly considered whether Plaintiff's
     impairments met or equaled the requirements of a listed
     impairment.

[JS 2-3.]

As discussed below, Issue Two is dispositive.

D.   **DR. NOBLETT**

In his second claim, Plaintiff asserts that the ALJ did not properly account for the opinion of Dr. Bradley Noblett, a neurological surgeon who twice saw Plaintiff, in June and November 2007, for complaints of back problems. [JS 9-10; AR 228, 230-32.]

**Background**

At the hearing, Plaintiff testified that he injured his back in a gardening accident, apparently on or around his alleged disability onset date of April 19, 2005. [AR 27.]  At the time of the injury, Plaintiff had worked for several years at a distribution center for Ford Motor Company as a warehouse attendant, which involved lifting and carrying car parts from a warehouse to a dock. [AR 26.]  Plaintiff was no longer able to perform his job at Ford, and he received a buyout from the company. [AR 28.]  Plaintiff has not worked since the injury. [AR 11.]

1    According to the medical record, Plaintiff began receiving
2  ongoing treatment from Dr. Anne Ford to address his lower back pain
3  since the time of the injury. [AR 136-72.]  Plaintiff's initial
4  treatment included pain killers and physical therapy. [Id.; AR 178-
5  82.]  In August 2006, Dr. Ford wrote a letter stating, among other
6  things, that Plaintiff "is limited to lifting less than five pounds or
7  he has significant back pain and spasm." [AR 194.]

8    In June 2007, Dr. Ford arranged for Plaintiff to have an MRI of
9  the lumbar spine and referred Plaintiff to an examination by Dr.
10 Noblett. [AR 230-34.]  A record of the MRI indicated an impression
11 that Plaintiff had mild degenerative disc disease most notable at the
12 L4-5 disc, level with moderate to severe left neural foraminal
13 narrowing, and that the test result was stable in comparison with a
14 similar study taken in May 2006. [AR 233-34.]  Dr. Noblett, in his
15 examination, initially noted that Plaintiff's "symptoms have persisted
16 and remain present on a daily basis and quite aggravating." [AR 230.]
17 Dr. Noblett also noted that Plaintiff had been seen previously by an
18 orthopedic spine surgeon to discuss "potential operative
19 interventions." [Id.; see AR 222-23 (examination by Dr. Gerald
20 Alexander on October 27, 2006).]  In reference to the MRI, Dr. Noblett
21 stated that the test showed, "most notably, I believe, a left L4-5
22 intra and extraforaminal disc protrusion, in other words a far lateral
23 disc protrusion that is likely compromising the existing L4 nerve
24 root." [AR 231.]  As a recommendation to address the impairment, Dr.
25 Noblett gave the opinion that

26       Though much time has passed and it is less clear how successful
27       he would be, even with a surgical undertaking, I believe his
28       options are physical therapy which he has tried and failed,

                                  7

1    epidural steroid injections which I would be unlikely to
2    recommend, not simply because of his diabetes but due to
3    suggesting that he will not heal or improve spontaneously and
4    finally the option of surgical resection of the disc through an
5    extraforaminal approach.
6    Notwithstanding the amount of time that has passed, I think the
7    odds are reasonably good that he would glean some benefit from a
8    decompression of that nerve root, though not necessarily be
9    cured.
10   [AR 231.]
11       Dr. Noblett further noted that Plaintiff "is unable to perform
12   any form of manual or physical labor" such as he performed at Ford,
13   and that Plaintiff was not currently considering surgical
14   intervention, but that "I would be happy to discuss further with him
15   the option of a surgical discectomy." [AR 232.]
16       Based on the findings of Dr. Noblett's examination, Dr. Ford
17   wrote another letter in October 2007, stating, among other things,
18   that in her opinion, "I do not believe Wesley is capable of working in
19   any field with any physical work of which he has been trained to do."
20   [AR 227.]
21       One month later, in November 2007, Dr. Noblett saw Plaintiff
22   again. [AR 228.]  Dr. Noblett initially observed that Plaintiff was
23   "doing quite a bit worse than our last visit in June 2007" and that
24   "Plaintiff initially chose to be treated conservatively, but returns
25   today, doing quite a bit worse." [Id.]  Dr. Noblett also observed that
26   Plaintiff "ambulates only with difficulty and whether standing or
27   sitting, is leaning dramatically over toward the right side, I suspect
28   thereby decompression the impinged nerve root at the foraminal level."

1   [Id.]  Dr. Noblett recommended that Plaintiff have another MRI and

2   stated that, "My suspicions are that a surgical decompression or

3   discectomy, whether from an intra or an extraforaminal approach would

4   lead to significant clinical benefits, but that will be up to the

5   patient to decide." [Id.]  Dr. Noblett also stated that "I do not feel

6   he is able to return to any form of work, as prolonged sitting,

7   standing or movement tend to aggravate his symptoms."  [Id.]  At the

8   hearing, held approximately three weeks later, Plaintiff testified

9   that he was still in discussions with Dr. Noblett about the

10   possibility of surgery. [AR 30.]

11                **The Administrative Finding**

12      In the administrative decision issued on January 25, 2008, the

13   ALJ stated that the medical evidence indicated, with respect to

14   Plaintiff's treatment recommendations, that, "Surgical intervention

15   has been discussed, but there is no indication that any physician was

16   proceeding in that direction.  Instead, exhaustion of non-operative

17   modalities have been encouraged." [AR 13.]  With respect to Dr.

18   Noblett's opinion in particular, the ALJ stated that both Dr. Ford and

19   Dr. Noblett's conclusion that Plaintiff was disabled was offered

20   "within the context of workers compensation that the claimant cannot

21   return to his highly exertional job as a warehouse attendant." [AR

22   14.]  The ALJ also noted that Plaintiff has received conservative

23   care, "which is contraindicative of the severe, debilitating

24   conditions alleged by the claimant, or with the restrictions against

25   even sedentary work." [Id.]  Accordingly, Dr. Noblett's opinion was

26   apparently given no weight.

27                **Discussion**

28      Ninth Circuit cases distinguish among the opinions of three types

of physicians: those who treat the claimant (treating physicians),
those who examine but do not treat the claimant (examining or
consultative physicians), and those who neither examine nor treat the
claimant (non-examining physicians).  <u>Lester v. Chater</u>, 81 F.3d at
830.  The opinion of a treating physician is given deference because
he is employed to cure and has a greater opportunity to know and
observe the patient as an individual.  <u>Sprague v. Bowen</u>, 812 F.2d
1226, 1230 (9th Cir. 1987).  The opinion of the treating physician,
however, is not necessarily conclusive as to either physical condition
or the ultimate issue of disability.  <u>Magallanes v. Bowen</u>, 881 F.2d
747, 751 (9th Cir. 1989), <u>Rodriquez v. Bowen</u>, 876 F. 2d 759, 761-62 &
n.7 (9th Cir. 1989).  "'The administrative law judge is not bound by
the uncontroverted opinions of the claimant's physicians on the
ultimate issue of disability, but he cannot reject them without
presenting clear and convincing reasons for doing so.'"  <u>Reddick v.
Chater</u>, 157 F.3d at 725. (quoting <u>Matthews v. Shalala</u>, 10 F.3d 678,
780 (9th Cir. 1993)(quoting <u>Montijo v. Secretary of Health & Human
Servs</u>., 729 F.2d 599, 601 (9th Cir. 1984).  Even if a treating
physician's opinion on disability is controverted, it can be rejected
only with specific and legitimate reasons supported by substantial
evidence in the record.  <u>Lester v. Chater</u>, 81 F.3d at 830; <u>see also</u>
<u>Benecke v. Barnhart</u>, 379 F.3d 587, 591 & n.1 (9th Cir. 2004).

     In this case, the rejection of Dr. Noblett's opinion did not meet
this standard.  The conclusions reached in the ALJ's decision that
there was no indication that any physician was proceeding in the
direction of surgical intervention and that Plaintiff's physicians had
chosen to give him only conservative treatment are clearly refuted by
the record.  Dr. Noblett's opinion, the most recent medical opinion

1  evidence in the record, established that prior conservative treatment
2  options had been exhausted and unsuccessful, that it was Plaintiff's
3  choice to proceed conservatively, that Dr. Noblett believed such
4  treatment options were of doubtful future benefit, and that surgical
5  intervention would probably lead to a significant clinical benefit if
6  Plaintiff decided to pursue that option upon review of a new MRI. [AR
7  228, 230-32.]   The record does not support the interpretation that
8  Plaintiff was limited to conservative treatment because of a
9  perception that his impairment was not serious or that more aggressive
10 treatment options such as surgery were not seriously considered.
11 Accordingly, specific and legitimate reasons based on substantial
12 evidence in the record were not provided to discount Dr. Noblett's
13 opinion, and reversal on the basis of this issue is required.  <u>Lester</u>
14 <u>v. Chater</u>, 81 F.3d at 830.

15      **E.   REMAND FOR PAYMENT OF BENEFITS**

16      The decision whether to remand for further proceedings is within
17 the discretion of the district court.   <u>Harman v. Apfel</u>, 211 F.3d 1172,
18 1175-1178 (9th Cir. 2000).   Where there are outstanding issues that
19 must be resolved before a determination can be made, and it is not
20 clear from the record that the ALJ would be required to find the
21 claimant disabled if all the evidence were properly evaluated, remand
22 is appropriate.   <u>Id</u>., 211 F.3d at 1179.   However, where no useful
23 purpose would be served by further proceedings, or where the record
24 has been fully developed, it is appropriate to exercise this
25 discretion to direct an immediate award of benefits.   <u>Id</u>. (decision
26 whether to remand for further proceedings turns upon their likely
27 utility).

28      Here, as set out above, specific and legitimate reasons supported

by substantial evidence in the record were not provided to reject Dr.
Noblett's opinion; accordingly, it is credited as true.  Harman v.
Apfel, 211 F.3d at 1178; Lester v. Chater, 81 F.3d at 834.
Specifically, Dr. Noblett stated that from a functional standpoint,
Plaintiff is precluded from prolonged sitting, standing or movement.
[AR 228.]  During the administrative hearing of November 28, 2007, the
vocational expert testified that a limitation to very short periods of
sitting, standing and walking would preclude Plaintiff from performing
his past relevant work or other work in the national economy. [AR 41-
42.]  Accordingly, the existing record mandates a finding of
disability.  See Harman v. Apfel, 211 F.3d at 1180 (citing cases where
award of benefits was directed when there was vocational expert
testimony that the limitations established by improperly discredited
medical evidence would render claimant unable to work).  Under these
circumstances, remand for payment of benefits is appropriate.

## VI.  ORDERS

Accordingly, **IT IS ORDERED** that:

1.   The decision of the Commissioner is **REVERSED**.

2.   This action is **REMANDED** to defendant for payment of
benefits.

3.   The Clerk of the Court shall serve this Decision and Order
and the Judgment herein on all parties or counsel.


DATED: November 17, 2009

                    _____/S/_____
                       CARLA M. WOEHRLE
                    United States Magistrate Judge

12